UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FREDERICK PIÑA,

               Plaintiff,

       -against-

NEW YORK STATE GAMING
COMMISSION; BRIAN O'DWYER; JOHN A.
CROTTY; SYLVIA B. HAMER; MARTIN J.
MACK; PETER J. MOSCHETTI JR.;
MARISSA SHORENSTEIN; JERRY
SKURNIK; SCIENTIFIC GAMES,

              Defendants.

24-CV-5383 (LTS)

25-CV-4117 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). On July 11, 2024, he filed a complaint against the New York State Gaming Commission ("NYSGC") and its commissioners, asserting claims in connection with lottery tickets that he purchased in 2023 and 2024. (ECF 1.) The complaint was assigned docket number 25-CV-5383 ("*Piña I*"). On July 29, 2024, Plaintiff filed an amended complaint in *Piña I*. (ECF 12.)

By order dated December 10, 2024, the Court: (1) dismissed the amended complaint for failure to state a claim; and (2) granted Plaintiff leave to replead his claims in a second amended complaint. (ECF 16.) On December 12, 2024, instead of filing a second amended complaint, Plaintiff filed a notice of interlocutory appeal. (ECF 17.) By Mandate issued May 15, 2025, the Second Circuit dismissed the appeal, "because the district court has not issued a final order as contemplated by 28 U.S.C. § 1291." (ECF 18.)

Although *Piña I* remained pending, on May 13, 2025, Plaintiff filed a new complaint against the NYSGC, its commissioners, and Scientific Games, Inc. ("Scientific"), accompanied by an IFP application and a request for summonses. Plaintiff did not label the new complaint

with the docket number for *Piña I*, and the clerk's office opened it as a new civil action. *See Piña v. New York State Gaming Comm'n*, No. 25-CV-4117 ("*Piña II*"). On May 17, 2025, Plaintiff filed in *Piña II* a "NOTICE OF FILING OF SUPPLEMENTAL EVIDENCE PURSUANT TO FRCP 15(d)." (ECF 6.) By order dated May 20, 2025, the Court directed the Clerk of Court to docket the *Piña II* pleadings (ECF 1, 6) collectively as a second amended complaint in *Piña I* and to close *Piña II* without prejudice. (ECF 8.)

Plaintiff subsequently filed motions in both *Piña I* and *Piña II* objecting to the filing of the *Piña II* documents in *Piña I* and the dismissal of *Piña II* without prejudice, and seeking this Court's recusal in both matters. For the following reasons, the Court denies all pending motions and dismisses the second amended complaint filed in *Piña I.*

## BACKGROUND

**A.    Procedural history and the allegations in the operative pleadings in *Piña I***

Plaintiff alleged in the first amended complaint that the written instructions on the New York State Lucky 7s scratch-off lottery tickets that he purchased – stating that tickets showing "three '7' symbols in ANY row, column or diagonal" – were deliberately misleading, because those symbols in fact needed to "be in a single row across, not across columns or diagonally, to win the cash prize." (ECF 12 ¶¶ 9-13.) Plaintiff asserted claims under the Lanham Act, 15 U.S.C. § 1125; the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45; and the federal RICO statute, 18 U.S.C. §§ 1961-1968, based on Defendants having allegedly committed federal wire and mail fraud, in violation of 18 U.S.C. §§ 1341, 1343. Plaintiff also claimed that Defendants violated his right to due process, in violation of 42 U.S.C. § 1983, and he asserted state-law claims of negligence, fraud, unjust enrichment, breach of contract, and false advertising in violation of New York General Business Law §§ 349, 350. (*Id.* ¶ 13.) Plaintiff attached to the amended complaint a July 6, 2023 letter from Kent D. Vander Wal, Senior Attorney for NYSGC,

in which he explained that lottery ticket "transactions and winners are subject to New York State Laws and New York Lottery Rules and Regulations," and that under the governing regulations, 9 NYCRR Part 5006, Plaintiff's tickets were not winning tickets. (*Id.*, Exh. B.)

In its December 10, 2024 order, the Court held that the amended complaint did not set forth facts giving rise to claims under the RICO statute or the Lanham Act; that the FTCA did not provide for a private right of action; and that Plaintiff had failed to allege facts showing a property interest that would give rise to a due process claim under Section 1983. The Court declined to exercise supplemental jurisdiction of any state law claims. (ECF 16.)

In the submissions originally filed in *Piña II*, which the Court is construing as the operative pleading in *Piña I*, Plaintiff adds Scientific as a Defendant; realleges the Section 1983 due process claim, the RICO claim, and state-law claims; and alleges for the first time a claim under the False Claims Act, 31 U.S.C. § 3729. Plaintiff asserts:[1]

> This new Verified Complaint cures previous deficiencies identified in the Court's December 10, 2024, Order of Dismissal (ECF 16), again, in a prior civil action **(See, *Piña v. N.Y. Commission, et al*, Case No.: l:24-cv-05383-LTS)** by alleging (and legally) proving a state-created property interest in lottery prizes, specifying RICO predicate acts with particularity, limiting relief to comply with Eleventh Amendment immunity, omitting nonviable federal claims, and providing concrete evidence.

(ECF 19 at 2.)

Plaintiff alleges that on "or after August 16, 2024, after filing [*Piña I*], he purchased new "Lucky 7s" ticket and "1,000,000 GRANDE tickets," which had "revised" instructions. (*Id.*) Plaintiff alleges that the revised instructions "now state":

> Reveal three "7" symbols in the same row, column, or diagonal, win PRIZE shown. Reveal two "7" symbols and a "$$" symbol in the same row, column, or diagonal, win double PRIZE shown. Reveal "A HORSESHOE SYMBOL"

---

[1] The Court quotes from Plaintiff's submissions verbatim. All spelling, grammar, and punctuation are as in the originals unless noted otherwise.

symbol in the BONUS area, win PRIZE shown." This change from the original
"ANY row, column, or diagonal" to "the same row, column, or diagonal."

(*Id*.)

Plaintiff claims that the revised instruction "clarifies the ambiguity Plaintiff relied on for
his 119 winning tickets, evidencing Defendants' awareness that the original instructions were
willfully misleading. The revision, made without compensating Plaintiff for prior losses or
notifying affected consumers, demonstrates Defendants' intent to conceal their **fraudulent**
scheme and avoid liability." (*Id*.) He asserts that Defendants "clarif[ied] ambiguous language,"
without "compensating" him or "notifying affected consumers, evidences [their] intent to
conceal prior fraud and continue the scheme, supporting the pattern of racketeering activity." (*Id.*
at 24.)

Plaintiff further alleges that the NYSGC Commissioners "approved ticket designs and
validation policies" during meetings held between 2022 and 2025, and that Scientific was
"contracted by the [NYSGC] to design, print, and validate" the lottery tickets, and then
"transmitted misleading Lucky 7s instructions via www.nylottery.ny.gov, which "affect[ed]
interstate commerce" and "induc[ed] Plaintiffs $119 purchase." According to Plaintiff, this
conduct is evidence of racketeering activity. (ECF 16 at 19, 23.)

Plaintiff attaches to the second amended complaint the same July 6, 2023 letter from
Kent D. Vander Wal that was attached to the amended complaint in *Piña I*. According to
Plaintiff, the letter demonstrates that Van der Wal, who is not a defendant, committed mail fraud
by mailing it to Plaintiff "falsely denying Lucky 7s prizes despite compliance with instructions,
intending to defraud Plaintiff of $176,980." (*Id.* at 23.)

On July 9, 2025, Plaintiff filed a "motion to supplement" the second amended complaint
with "new evidence" and "to update the running tab of monetary damages' he seeks against

Defendants. (ECF 23 at 1.) In the motion, Plaintiff alleges that on July 9, 2025, he purchased a

"New York Millionaire: Win Up To $1,000,000!" scratch-off ticket, which bore the following

instructions on the back:

> Match any of YOUR NUMBERS to any of the WINNING NUMBERS, win prize
> shown. Reveal a '2X' symbol, win 2 times prize shown for that symbol. Reveal a
> '5X' symbol, win 5 times prize shown for that symbol. Reveal a '10X' symbol,
> win 10 times prize shown for that symbol.

(ECF 23 at 3.)

> According to Plaintiff, the front of the ticket showed the following:

> WINNING NUMBERS (Front of Ticket): "11 ELVN," "7 SEVEN," "30
> THIRTY," "20 TWNTY," "25 TTYFV" - YOUR NUMBERS (Front of Ticket):
> "19 NNTN - $15.00 FIFTEEN," "9 NINE - JACKPOT 1 MILLION," "29 TCN -
> $20.00 TWENTY," "12 TLVE - $50.00 FIFTY," "16 SXTN - $500 FIV HUN," "1
> ONE - $200 TWO HUN," "26 TTSX - $50.00 FIFTY," "21 TTYON - $15.00
> FIFTEEN," "8 EIGHT - $5.00 FIVE," "3 THREE - JACKPOT 1 MILLION," "28
> TTYEG - $5.00 FIVE," "17 SVTN - $100 ONE HUN."

(*Id.*)

> Plaintiff alleges that

> the play instructions' use of the plural "NUMBERS" in "YOUR NUMBERS"
> implies that multiple numbers may be selected to match a single "WINNING
> NUMBER." Plaintiff selected "3 THREE - JACKPOT 1 MILLION" and "17
> SVTN - $100 ONE HUN," which sum to 20, matching the winning number "20
> TWNTY." Plaintiff claims this entitles him to a prize of $1,000,100.00, capped at
> the game's maximum prize of $1,000,000.

(*Id.*)

## B.    Pending motions

In *Piña I*, Plaintiff filed a motion to "Preclude Assignment of the Honorable Laura Taylor

Swain and Request Random Assignment Pursuant to 28 U.S.C. 455(a), 28 U.S.C. 137, and the

Due Process Clauses," and an "OBJECTION TO JUDICIAL RULINGS AND MOTION TO

CORRECT THE RECORD," seeking relief under "Federal Rule of Civil Procedure 60(a) and the Court's inherent authority to rectify errors in judicial proceedings."[2] (ECF 21, 22.)

In *Piña II*, Plaintiff filed a "MOTION TO REQUEST RANDOM ASSIGNMENT OF JUDGE AND TO PRECLUDE ASSIGNMENT OF THE HONORABLE LAURA TAYLOR SWAIN PURSUANT TO 28 U.S.C. § 137 AND CONSTITUTIONAL GUARANTEES OF DUE PROCESS, and an "OBJECTION TO EX PARTE CONSOLIDATION OF CASE NO. 25-CV-4117 INTO CASE NO. 24-CV-5383." (ECF 7, 9.)

In these submissions, Plaintiff alleges that the Court's failure to issue summonses or an order of service in *Piña I* was a "malicious error," and proves its "indifference" and "clear and implicit biases." (*Id* at 40-49.) He seeks the Court's recusal and moves for service of the operative complaint. (*Id.* at 51-63.) He also objects to the filing of the *Piña II* pleadings in *Piña I*, and the dismissal of *Piña II* without prejudice. (*Id.* at 64.)

## DISCUSSION

### A.    Pending motions

#### 1.    Motions for recusal

Plaintiff moves for this Court's recusal. A judge is required to recuse herself from "any proceeding in which h[er] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455 "sets out an objective standard for recusal, creating the so-called 'appearance of justice' rule." *DeLuca v. Long Island Lighting Co.*, 862 F.2d 427, 428 (2d Cir. 1988) (internal citation omitted); *see also ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012) (holding that this "provision is to 'be evaluated on an objective basis, so that what matters

---

[2] Plaintiff earlier filed in *Piña I* a "MOTION IN LIMINE TO ADMIT EVIDENCE PURSUANT TO RULE 401," which also remains pending. (ECF 15.)

is not the reality of bias or prejudice but its appearance.'") (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)). Under that test, the court asks: "Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (quoting *Diamondstone v. Macaluso*, 148 F.3d 113, 120-21 (2d Cir. 1998)).

"The [Second Circuit] has cautioned that . . . the grounds asserted in a recusal motion must be scrutinized with care, and judges should not recuse themselves solely because a party claims an appearance of partiality." *Barnett v. United States*, No. 11-CV-2376 (LAP), 2012 WL 1003594, at *1 (S.D.N.Y. Mar. 26, 2012) (internal quotation marks omitted) (*quoting In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001)). Where the standards governing disqualification are not met, "disqualification is not optional; rather, it is prohibited." *In re Aguinda*; *see also In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) ("A judge is as much obliged not to recuse [herself] when it is not called for as [s]he is obliged to when it is."). Were it otherwise, recusal motions would become a tool for "judge-shopping" and "impeding the administration of justice." *In re Martin-Trigona*, 573 F. Supp. 1237, 1243 (D. Conn. 1983). And Section 455 "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

Finally, "[r]ulings adverse to a party are not regarded in and of themselves as evidence of such bias or prejudice as would require recusal." *Sun v. Mo*, No. 24-CV-3630 (KPF), 2024 WL 4252580, at *2–3 (S.D.N.Y. Sept. 19, 2024) (quoting *Bishop v. United States*, No. 04-CV-3633 (CSH), 2004 WL 1497690, at *1 (S.D.N.Y. July 1, 2004)). In other words, the showing of

personal bias to warrant recusal must ordinarily be based on "extrajudicial conduct . . . not conduct which arises in a judicial context." *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994) (internal quotation marks and citation omitted).

Here, Plaintiff does not allege facts suggesting that the Court's impartiality might reasonably be questioned. He seeks recusal based solely on the Court's prior rulings, which do not support an inference of bias. *See Liteky*, 510 U.S. at 555 (citation omitted). Because there is no legitimate basis for recusal, the Court denies Plaintiff's motions seeking such relief.

### 2. Objections to the filing of the *Piña II* pleadings in *Piña I*, and dismissal of *Piña II* without prejudice

As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. *See Colorado Riv. Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."); *Curtis v. Citibank*, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (dismissing a subsequently filed complaint as duplicative under the court's inherent authority to administer its docket). As a result, plaintiffs "generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Calif. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008) (internal quotation marks omitted). Applying this principal, a district court has discretion to dismiss a later-filed action that is duplicative of proceedings already before it. *Id.*; *see also Humphrey v. Ct. Clerk ex rel. U.S. Sup. Ct.*, No. 5:11-CV-0938, 2012 WL 264603, at *3 (N.D.N.Y. Jan. 30, 2012) (holding that "dismissal of an action as duplicative has been found to fall within the ambit of the Court's power to dismiss a complaint . . . pursuant to 28 U.S.C. § 1915(e)").

The Court denies Plaintiff's challenges to the filing of the *Piña II* documents in *Piña I* and the dismissal of *Piña II* without prejudice. *Piña I* was pending when Plaintiff filed *Piña II*. Plaintiff states in the *Piña II* complaint that it "cures previous deficiencies identified" by the Court in *Piña I*. (ECF 1 at 3.) The *Piña II* complaint involves the same parties, arises from the same underlying events, and includes the same attachments. In dismissing *Piña II* without prejudice, the Court noted that because the new pleadings "raise[] the same claims, no useful purpose would be served by litigating this duplicate lawsuit." (*Piña II*, ECF 8 at 2.)

In the interest of conserving judicial resources, claims arising out of the same events should be included in a single suit, rather than prosecuting two lawsuits with overlapping claims against the same parties. Because Plaintiff does not suggest that *Piña II* concerns other claims, he provides no basis for the Court to revisit its order directing the clerk's office to docket the *Piña II* pleadings in *Piña I* and dismissing *Piña II* without prejudice.

### 3.    Motions for issuance of summonses and an order of service

Under 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen any complaint filed IFP, and dismiss it if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." *Id*. While the law mandates dismissal on any of these grounds, the Court is also obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). District courts are further instructed not to "dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

Here, the Court determined that the allegations in Plaintiff's first amended complaint failed to state a claim. It was thus appropriate for the Court to grant Plaintiff an opportunity to replead his claims, rather than to order that a deficient complaint be served. Moreover, as discussed below, the second amended complaint also fails to state a claim, and for that reason, the Court denies Plaintiff's motions for the issuance of summonses and an order of service.

**B.    Plaintiff's second amended complaint is dismissed for failure to state a claim**

**1.    Previously asserted claims**

Plaintiff again invokes Section 1983 and alleges that Defendants violated his right to due process, and further claims that Defendants engaged in a pattern of racketeering activity in violation of the RICO statute. The new facts that Plaintiff asserts in support of these claims do not remedy the deficiencies that the Court identified in its prior order, and its reasoning for dismissing those claims.

First, Plaintiff alleges that Defendants changed the written instructions to cover up their "fraudulent" behavior and did so "without compensating" him. (ECF 19 at 3.) Plaintiff is not entitled to compensation, however, in the absence of a property interest that is entitled to due process protection under federal or state law. *See Bheemarao v. City of N.Y.*, 141 F. Supp. 2d 446, 448 (S.D.N.Y. 2001) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-77 (1972)). Plaintiff provides no support for his claim that he possesses a property interest in winning the lottery.

Second, in support of his RICO claim, Plaintiff alleges that the NYSGC commissioners approved ticket designs and validation policies during meetings, revised the lottery instructions with the intention of "conceal[ing]" fraud, and contracted with Scientific to produce and transport the tickets. (ECF 19 at 2.) Plaintiff also claims that the letter sent to him by counsel to the NYSGC – who is not named as a defendant – in some manner constituted mail fraud. (*Id.*)

These allegations do not give rise to an inference that the NYSGC commissioners or its counsel, or Scientific, committed mail or wire fraud, or any other criminal offense, or engaged in a pattern of racketeering activity.

Because Plaintiff's amended pleadings do not suggest that Defendants violated Plaintiff's right to due process or engaged in conduct that violated the RICO statute, the Court dismisses Plaintiff's claims for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.    Qui tam claim

Plaintiff for the first time asserts that he is bringing this matter as a *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 ("FCA"). A *qui tam* action imposes civil liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a). Such suits may be brought by the federal government, or by a private person on behalf of the United States. 31 U.S.C. § 3730(a), (b)(1); *see United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932 (2009). There facts alleged do not suggest a plausible FCA claim, because Plaintiff does not allege that Defendants presented a fraudulent claim to the United States.

Additionally, a *qui tam* action under the FCA is brought in the name of the United States, which remains the real party in interest, and for that reason, an individual cannot pursue such an action *pro se*. *See U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) (concluding that private parties, acting on behalf of the United States, "lack a personal interest in False Claims Act *qui tam* actions . . . [and therefore] are not entitled to proceed *pro se*").

If Plaintiff wishes to pursue a proper FCA claim, he must bring a separate action in which he is represented by counsel. The Court dismisses Plaintiff's FCA claim without prejudice.

### 3.    State law claims

For the reasons set forth in the December 10, 2024 order, the Court declines to exercise supplemental jurisdiction of any state-law claims Plaintiff is asserting. *See* 28 U.S.C. § 1367(c)(3).

## FURTHER LEAVE TO AMEND DENIED

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's second amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

For the reasons set forth in this order and in the December 10, 2024 order, the Court dismisses Plaintiff's second amended complaint in *Piña I*, 24-CV-5383, filed IFP under 28 U.S.C. § 1915(a)(1), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

For the reasons set forth in this order, the Court denies the motions in *Piña I*, 24-CV-5383, and in *Piña II*, 25-CV-4117, and the Clerk of Court is directed to terminate all pending matters in both cases. *Piña II* remains closed.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter civil judgment dismissing *Piña I*, No. 24-CV-5383.

SO ORDERED.

Dated:     July 23, 2025
           New York, New York

                                    /s/ Laura Taylor Swain
                          _____
                                LAURA TAYLOR SWAIN
                          Chief United States District Judge